UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GREGORY L. FLETCHER,

Plaintiff,

v.

CORRECTIONAL COUNSELOR I
BRENDA LOMELI, et al.,

Defendants.

Case No. 18-cv-03350-YGR (PR)

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT; AND DENYING THEIR
MOTION TO DISMISS AS MOOT**

## I.    INTRODUCTION

Plaintiff Gregory L. Fletcher, a state prisoner currently incarcerated at California State Prison – Corcoran ("CSP – Corcoran") brings the instant *pro se* action, pursuant to 42 U.S.C. § 1983, stemming from constitutional violations resulting during his previous incarceration at Salinas Valley State Prison ("SVSP"), where he claims he had safety concerns. The time frame of the alleged violations is from when Plaintiff was first endorsed to be transferred from the California Health Care Facility ("CHCF") to SVSP on May 22, 2017 through December 8, 2017[1], when Plaintiff was transferred out of SVSP to the Substance Abuse Treatment Facility ("SATF"). Dkt. 1 at 1.[2]

The operative pleading is Plaintiff's original complaint (dkt. 1), in which he sought monetary damages against the following Defendants at SVSP: the Warden; Correctional Counselor I ("CCI") Brenda Lomeli[3]; former CCI Garcia; Captain N. Gonzalez[4]; Sergeant R.

---

[1] Initially, the Court indicated that the time frame was from May 22, 2017 to March 20, 2018, which is when Plaintiff claims he was informed that he was endorsed to be transferred to SATF. *See* Dkt. 9 at 1 (citing Dkt. 1 at 1). However, the record indicates that Plaintiff was actually transferred to SATF on December 8, 2017, *see* Dkt. 1 at 29, and therefore the Court uses that transfer date as the end of the time frame of the alleged constitutional violation.

[2] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by the parties.

[3] Defendant Lomeli was initially sued and served as "Lemoli/Lomeli," and the Court now uses the correct spelling of this Defendant's name.

[4] The Court notes that Defendant Gonzalez's name is mis-spelled as "Gonzales" in certain portions of Defendants' briefs. *See* Dkt. 21. The correct spelling is "Gonzalez." Dkt. 19 at 2.

Gomez; and various Doe Defendants.

The following summary of Plaintiff's claims is taken from the Court's January 16, 2019 service order, which states as follows:

> Plaintiff's claims arise from Defendants' alleged deliberate indifference to his safety needs stemming from an incident on November 30, 2017 in which Plaintiff claims that he "had an attempt[ed] assassination made on his life" (apparently he suffered a blow to the head, which rendered him unconscious) even after Plaintiff requested that Defendants remove him from being housed SVSP because he claimed his life was in danger. Dkt. 1 at 9. Plaintiff claims that for the "next 6 1/2 to seven months [he] still suffer[red] from severe pain [and] head injurie[s], blurry vision in [his] right eye, severe headaches, . . . fear for his safety, anxiety and despo[n]dency." *Id.* at 10.

Dkt. 9 at 2. The Court found that, liberally construed, Plaintiff stated a cognizable Eighth Amendment claim that Defendants Garcia, Lomeli, Gonzalez, and Gomez were deliberately indifferent to his safety needs. *Id.* The Court dismissed without prejudice Plaintiff's remaining claims of retaliation, supervisory liability against the SVSP Warden, and those against the Doe Defendants. *Id.* at 2-4. The Court directed the Clerk of the Court to serve the complaint and issued a briefing schedule for the served Defendants to file a dispositive motion. *See id.* at 4-7.

On March 19, 2019, Defendants Garcia, Lomeli, Gonzalez, and Gomez (hereinafter "Defendants") filed the instant Motion for Summary Judgment and Motion to Dismiss. Dkt. 21. They argue that (1) Plaintiff's claims fail because he only partially exhausted his administrative remedies; (2) there is no evidence that Defendants violated Plaintiff's Eighth Amendment rights; and (3) Defendants are entitled to qualified immunity. *Id.* at 6-7. Specifically, Defendants argue that: (a) Plaintiff "failed to properly exhaust his available administrative remedies against Defendants Lomeli and Gomez in accordance with California Code of Regulations, Title 15, § 3084.3(d), because he failed to identify them in his inmate appeals before filing this lawsuit"; (b) Plaintiff "has failed to allege facts that would demonstrate that Defendants had sufficient knowledge of any known risk"; and (c) Defendants are entitled to qualified immunity for Plaintiff's damages claims because a reasonable officer in each Defendant's position would not have believed that he had sufficient information to conclude Plaintiff faced an unreasonable risk of harm. *Id.* at 6-8.

Plaintiff filed an opposition, and Defendants filed their reply.  Dkts. 24, 25.

For the reasons outlined below, the Court GRANTS Defendants' motion for summary judgment and DENIES their motion to dismiss as moot.

## II.    DISCUSSION

### A.    Background[5]

#### 1.  The Parties

At the time of the events set forth in his complaint, Plaintiff was an inmate housed in SVSP.  Dkt. 1 at 8.

Defendants Garcia, Lomeli, Gonzalez, and Gomez are, or were at the time of the events alleged in Plaintiff's complaint, members of the custody staff at SVSP.  *See id.* at 2-3.

#### 2.  Relevant SVSP Policies[6]

##### a.  Facility Security Levels

The California Department of Corrections and Rehabilitation ("CDCR") designates "[e]ach camp, facility, or area of a facility complex" "at a security level based on its physical security and

[5] This Order contains many acronyms and abbreviations.  Here, in one place, they are:

| | |
|---|---|
| ad seg | Administrative Segregation |
| CDCR | California Department of Corrections and Rehabilitation |
| CHCF | California Health Care Facility |
| CSR | Classification Staff Representative |
| CCI | Correctional Counselor I |
| CCII | Correctional Counselor II |
| DSH | Department of State Hospitals |
| EOP | Enhanced Outpatient Program |
| ICC | Institutional Classification Committee |
| MCSP | Mule Creek State Prison |
| PREA | Prison Rape Elimination Act |
| R&R | Receiving and Release |
| SATF | Substance Abuse Treatment Facility |
| SVSP | Salinas Valley State Prison |
| SLR | Second Level of Review |
| SNY | Sensitive Needs Yard |
| SOMS | Strategic Offender Management System |
| SAMHSA | Substance Abuse and Mental Health Services Administration |
| TLR | Third Level of Review |
| UCC | Unit Classification Committee |

[6] All policies cited are referenced as of March to December 2017, which is the time frame during which Plaintiff was endorsed for transfer to SVSP.

United States District Court
Northern District of California

3

housing capability." Cal. Code Regs., tit. 15, § 3377. The classification or "security" levels are as follows:

> (a) Level I facilities and camps consist primarily of open dormitories with a low security perimeter.

> (b) Level II facilities consist primarily of open dormitories with a secure perimeter, which may include armed coverage.

> (c) Level III facilities primarily have a secure perimeter with armed coverage and housing units with cells adjacent to exterior walls.

> (d) Level IV facilities have a secure perimeter with internal and external armed coverage and housing units described in section 3377(c), or cell block housing with cells non-adjacent to exterior walls.

*Id.*

### b. Inmate Transfers and the Classification Process

Because Plaintiff alleges that he was transferred from CHCF to a prison with safety concerns, the Court also includes the relevant procedure relating to inmate transfers and the classification process. Any inmate transferred from a facility other than a reception center shall require a classification committee action and endorsement by a classification staff representative ("CSR"). Cal. Code Regs., tit. 15, § 3379(a)(1). California Code of Regulations, Title 15, § 3379(a)(1) states as follows:

> (a) Transfer requirements.

> (1) Unless exempted within this subsection, any inmate transfer shall require a classification committee action and endorsement by a classification staff representative (CSR) or expedited transfer approval by the Chief of the Population Management Unit. A classification committee action and CSR endorsement is not required in the cases of illegal aliens transferring for the purpose of deportation proceedings and expedited transfers warranted under emergent circumstances, including but not limited to inmate medical or mental health needs and transfers from one restricted housing unit to a similar restricted housing unit. Additionally, a classification committee action is not required for an inmate transfer from a reception center.

*Id.*

As to the classification process, California Code of Regulations, Title 15, § 3375 states in part as follows:

> (a) The classification process shall be uniformly applied,

commencing upon reception of a person committed to the custody of the Secretary and shall continue throughout the time the individual remains under the Secretary's jurisdiction. Each inmate shall be individually classified in accordance with this article . . . .

(b) The classification process shall take into consideration the inmate's needs, interests and desires, his/her behavior and placement score in keeping with the Department and institution's/facility's program and security missions and public safety.

(c) Each determination affecting an inmate's placement within an institution/facility, transfer between facilities, program participation, privilege groups, or custody designation shall be made by a classification committee composed of staff knowledgeable in the classification process.

Cal. Code Regs., tit. 15, § 3375 (a)-(c).

### 3. Background Relating to Plaintiff's Safety Concerns and Placement Decisions

#### a. Letters Sent by Plaintiff Relating to Safety Concerns at SVSP

In his complaint, Plaintiff alleges that the CCI, Correctional Counselor II ("CCII"), Sergeant, Lieutenant, Captain, and the Warden "all knew that if [they] sen[t] [him] back to [SVSP] that [he] could be killed or murder[ed], because [he] had show[n] them all a letter from Congress of the United States[,] House of Representatives . . . the Joint Commission . . . and the Substance Abuse and Mental [Health] Service[s] Administration ("SAMHSA")". Dkt. 1 at 8, 17, 18, 19. Plaintiff attached to his complaint an April 11, 2016 letter from the United States House of Representatives concerning "situations at [SVSP]" that was responded to by Sam Farr, a member of Congress. *Id.* at 17. Mr. Farr stated that Plaintiff's concerns involved "an issue that is mo[re] properly within the jurisdiction of state government," and he referred Plaintiff to his "representative in the California legislature, Assemblyman Luis Alejo." *Id.* at 17. Plaintiff also attached to his complaint an April 12, 2017 letter from The Joint Commission "in response to the concerns [he] shared with The Joint Commission concerning [SVSP]," and informed Plaintiff that SVSP "is not currently accredited by The Joint Commission." *Id.* at 18. Plaintiff was advised to "contact the organization directly for resolution" or the "State Department of Health" because the Joint Commission had "no authority to evaluate the information [Plaintiff] reported." *Id.* Finally, Plaintiff attached to his complaint an April 25, 2016 letter from SAMHSA relating to his concerns about "[his] safety and the safety [of] others, as well as prison conditions in [SVSP]" and advised

Plaintiff that SAMHSA is "not a direct provider of [such] services" and did not "investigate situations like the one [he] describe[d] . . . ." *Id.* at 19. Instead, Plaintiff was advised that "[i]f he believe[d] that [his] civil liberties have been violated, [he] may contact the Disability Rights of California (DRC), Office of Clients' Rights." *Id.*

### b. Endorsement to SVSP on May 22, 2017

Plaintiff, who is classified as a "Level II" inmate, states that on May 22, 2017, he was assigned to be housed with "Level IV" inmates at SVSP, thereby placing his safety in jeopardy. Dkt. 1 at 8.

According to a "Non-Committee Endorsement" dated May 22, 2017, Plaintiff was authorized for transfer from CHCF to SVSP. *Id.* at 8, 15. The endorsement of Plaintiff to SVSP was based upon a "[d]ouble override" "to facilitate necessary EOP[7] treatment." *Id.* at 15 (footnote added). The endorsement further noted "lower bunk concerns" for Plaintiff, who uses a walker and a cane. *Id.*; *see also id.* at 34. The endorsement also noted enemy concerns "at SVSP Facility A, however placement at SVSP Facility D can be accommodated" and instructed that "[s]taff are to house accordingly." *Id.* at 15. In addition, the CSR noted that on February 28, 2017, Plaintiff was transferred from CHCF to CHCF Department of State Hospitals ("DSH"). *Id.* The CSR further noted that Plaintiff was designated as a High Risk Medical based on his Medical Classification Chrono dated April 23, 2017. *Id.* Plaintiff was "clinically discharged on 5/19/2017 at the EOP [Level of Care]." *Id.* Finally, the CSR notes as follows:

> CHCF recommended [Mule Creek State Prison ("MCSP")]-II [Sensitive Needs Yard]/EOP [with alternative to] SATF-II SNY/EOP. Placement is based on inmates' case factors, housing and transportation availability, departmental needs and [California Penal Code §] 5068[8] consideration.

---

[7] "EOP" or Enhanced Outpatient Program "provides care to mentally disordered inmate-patients who would benefit from the structure of a therapeutic environment that is less restrictive than inpatient settings. This may include response to crisis symptoms which require extensive treatment, but can be managed as outpatient therapy with several psychotherapy sessions or medication adjustment with follow-up visits." CDCR Mental Health Program Guide 8, http://www.cdcr.ca.gov/dhcs/docs/mental%20health%20program%20guide.pdf; *see also Williams v. Kernan*, 2009 WL 2905760, *1 (E.D. Cal. 2009) (describing the four levels of care in the CDCR's mental health delivery system).

[8] California Penal Code § 5068 (along with California Code of Regulations, Title 15,

*Id.* (brackets and footnote added).

### c. Placement at SVSP and Plaintiff's Pending Safety Concerns

On an unknown date after May 22, 2017, Plaintiff was transferred to SVSP Facility D. *Id.* at 8, 26. On June 11, 2017, Plaintiff sent a CDCR Form 22, "Inmate/Parolee Request for Interview, Item or Service" to his CCI, Defendant Garcia, "stating that a [retaliation] was again[st] [Plaintiff] and to please endorse [him] to his rightful level 2 SNY/EOP Facility, but [Plaintiff] was ignore[d] and was told to get the hell away from him cause [he] don't know who [he's] fucking with." *Id.* at 8, 22. The record shows that Defendant Garcia responded, stating as follows: "You will be scheduled for [Unit Classification Committee ("UCC")] ASAP. See attached Endorsement Chrono placing you @ SVSP-IV (180/SNY/EOP). Transfer options will be discussed . . . ." *Id.*

Plaintiff claims that "[f]or over 5 months, [he] sent Forms 22 and other letters to the CCI, CCII, S[e]rgeant and Captain as well as to the Warden, Sacramento, and other state and federal agencies that [his] life was in danger, but [no]one listen[ed] to [him]." Dkt. 24 at 3.

On September 17, 2017, Plaintiff claims that "someone put a sex offense on [his] file and [he] never had one." *Id.* Plaintiff claims that "[t]his was a set up to get [him] murdered [be]cause [it] place[d] [him] [in a position] to be high risked to be assassinated and killed." *Id.* Plaintiff also claimed that the double override to a Level IV facility was not appropriate and a result of him having submitted appeals. *Id.* It seems that Plaintiff had submitted an "Emergency" 602 Inmate Appeal log no. SVSP-L-17-0555 on September 17, 2017 stating that SVSP staff had allegedly inappropriately placed his inability to have family visits because of sex offenses on his classification jacket. Dkt. 1 at 36. Thereafter, SVSP prison officials lifted the restriction on Plaintiff's family visits caused by a pending Prison Rape Elimination Act ("PREA") inquiry, which is usually done to investigate an inmate's claim of staff sexual misconduct. *Id.* at 37.

On October 23, 2017, Plaintiff spoke with his correctional counselor, Defendant Lomeli, and claims that "she stated that [she] don't give a dam[n] about [Plaintiff] being black and that

---

§ 3375) sets forth the standards for classification. *See* Cal. Penal Code § 5068 (prisoner must be classified; and when reasonable, assigned to institution of appropriate security level and gender population nearest prisoner's home unless other classification factors make such placement unreasonable).

[she is] getting pressure from the Greenwall[9] and she knowingly and intentionally put [Plaintiff's] life in danger and did not remove [him] from [SVSP's] D-Yard." Dkt. 1 at 9, 27.

Thereafter, Plaintiff complained to SVSP prison officials about Defendant Lomeli's aforementioned actions on October 23, 2017. *Id.* at 27. On October 27, 2017, CCII H. Aguilera interviewed Defendant Lomeli regarding her conversation with Plaintiff on October 23, 2017. *Id.* CCII Aguilera stated as follows:

> CCI Lomeli recalled that you were upset that you had not had your Annual review. CCI Lomeli also recalls that she advised you that she would schedule your Annual review as soon as she could. A review of our Strategic Offender Management System ("SOMS") notes that your Annual review has been scheduled for October 31.
>
> On October 27, 2017, I also interviewed Sergeant (Sgt.) R. Gomez regarding your conversation with CCI Lomeli. Sgt. Gomez stated that CCI Lomeli conducted herself in a very professional manner when she was speaking with you and that at no time did she make any derogatory comments to you.

*Id.*

On November 27, 2017, Plaintiff submitted a 602 Inmate Appeal log no. SVSP-L-17-07116, in which he claimed that he is a Level-II inmate, he has been "threaten[ed] over 5 times" for being a Level-II inmate, and he has been on a hunger strike for twenty-eight days because he is "afraid [for his] life." *Id.* at 32; Voong Decl., Ex. C.

Plaintiff's SOMS Auditor Action dated November 29, 2017 "reveals that he was endorsed to SATF Level-II-SNY-EOP." *Id.* at 29.

### d. November 30, 2017 Assault Incident at SVSP

On November 30, 2017, Petitioner "had an attempted assassination made on his life." Dkt. 1 at 9. Plaintiff claimed that he was assaulted at SVSP Facility D yard near the basketball court and was rendered unconscious by the attacking inmate. *Id.* at 37.

On that same date, Plaintiff was placed in administrative segregation ("ad-seg") due to self-expressed safety concerns. *Id.*

Thereafter, Plaintiff submitted another 602 Inmate Appeal log no. SVSP-L-17-07883, in

---

[9] Plaintiff seems to be referring to SVSP correctional officers whom he collectively calls the "Greenwall" or the "Greenwall Gang."

8

which he complained about the November 30, 2017 incident, which resulted in his right eye being damaged.  Voong Decl., Ex. D at 2.

### e. Investigation By Defendant Gomez Into Plaintiff's Safety Concerns

An investigation into Plaintiff's claim of safety concerns was completed and documented by Defendant Gomez in a CDC Form 128-B, General Chrono, dated December 6, 2017, which noted that Plaintiff was "not being truthful about his safety concerns." Dkt. 1 at 28, Voong Decl., Ex. C at 10.  Specifically, Defendant Gomez noted that Plaintiff was evasive during his interview and refused to provide any information that would assist them in identifying any possible suspects or the reason as to why Plaintiff was threatened.  Voong Decl., Ex. C at 10.

### f. Endorsement to Transfer Plaintiff to SATF

On December 7, 2017, Plaintiff appeared before an Institutional Classification Committee ("ICC") for his classification hearing.  *Id.* at 28.  The ICC "documented that he had been previously been endorsed to [SATF] Level-II EOP/[SYN] and elected to expedite his transfer." *Id.*

On December 8, 2017, Plaintiff was transferred to SATF.  *Id.* at 29.

In a letter dated January 10, 2018, SATF Warden S. Sherman responded to Plaintiff's concerns that he had written a letter post-marked on December 19, 2017 to Governor Edmund G. Brown, in which Plaintiff expressed concern that "the hunger strike [he was] engaging in due to being housed at [SVSP] Level IV [EOP]/[SNY]."  *Id.* at 8.  Plaintiff stated he "felt [his] safety was in jeopardy if [he] remained on the Level IV facility."  *Id.*  However, Warden Sherman noted that Plaintiff had since been transferred to SATF and that he was "no longer on a hunger strike and [he was] eating regularly."  *Id.*  Warden Sherman added that during an interview with CCII Cunning, Plaintiff stated he now felt he was "appropriately housed on a Level II facility and [his] previous contentions [were] moot."  *Id.*  Warden Sherman encouraged Plaintiff to "follow the CDCR 602 process."  *Id.*

In another letter dated April 10, 2018, SVSP Warden Hatton responded to Plaintiff's concerns that he had written in a letter addressed to CDCR Secretary S. Kernan alleging that SVSP staff "subjected [Plaintiff] to maltreatment at the hand of inmates assigned to SVSP-Facility

D," including the aforementioned assault on November 30, 2017. *Id.* at 26. Based on Plaintiff's concerns, Warden Hatton made contact with the SVSP Inmate Appeals Office. *Id.* According to Warden Hatton, a review of Plaintiff's records determined the "battery" he claimed to have occurred on November 30, 2017 "ha[d] been addressed via the CDCR 602 Inmate/Parolee Appeal Form." *Id.* (citing Appeal log no. SVSP-L-17-7883).

### 4. Detailed Explanation of Relevant 602 Appeals

#### a. 602 Appeal Log No. SVSP-L-17-05555 (Emergency Appeal Relating to Sex Offense in His File and Inappropriate Transfer)

On September 17, 2017, Plaintiff submitted an "Emergency" 602 Inmate Appeal log no. SVSP-L-17-05555, alleging that an SVSP prison official inappropriately placed his inability to have family visits because of sex offenses on his classification jacket, which Plaintiff claims put him at risk. Dkt. 1 at 36. Plaintiff also claimed that the double override to a Level IV facility was not appropriate and a result of him having submitted appeals. *Id.* After the appeal was submitted, it was bypassed at the first level and received a second level review and decision dated October 12, 2017. *Id.* at 36-37. The second level reviewer determined that the restriction on Plaintiff's family visits, which had been caused by the pending PREA inquiry, had been lifted. *Id.* at 37. Further, the second level reviewer also noted that Plaintiff's Auditor Action in the Non-Committee Endorsement dated May 22, 2017 indicated that the CSR endorsed him to SVSP based on a double override to facilitate necessary EOP treatment, and that no evidence existed of retaliation as referenced by Plaintiff's appeal. *Id.* Plaintiff's requests to transfer from SVSP were denied pending his upcoming annual review during which his transfer recommendations would be considered. *Id.*

The record then shows that this appeal was screened out at the third level of review on December 12, 2017, because "supporting documents [were] not attached." Voong Decl., Ex. A at 3.

#### b. 602 Appeal Log No. SVSP-17-07116 (Safety Concerns Due to Transfer)

On November 27, 2017, Plaintiff submitted a 602 Inmate Appeal log no. SVSP-17-07116, in which he complained about being a Level II inmate who was "intentionally" housed in a Level

IV facility that is not designed to house high risk medical inmates like himself.  Voong Decl., Ex.
C.  After the appeal was submitted on November 29, 2017, it was bypassed at the first level and
received a second level review, where Chief Deputy Warden R. Binkele recommended on
December 21, 2017 that the appeal be "partially granted" as to Plaintiff's request "that an
investigation be conducted into his double override that endorsed him to a Level-IV facility."
Voong Decl., Ex. C at 11.  However, Plaintiff's request to be compensated was denied because
Chief Deputy Warden Binkele "did not find any indication of wrongdoing on behalf of the CSR
who endorsed [Plaintiff's] case to SVSP-Level IV."  *Id.*  Dissatisfied, Plaintiff sought a third level
review of the decision.  *Id.* at 5.

On April 16, 2018, the appeal was denied at the third level by Appeals Examiner H. Liu
and Office of Appeals Chief M. Voong.  *Id.* at 2-3.  The findings at the third level are as follows:

> The documentation and arguments are persuasive that the appellant
> has failed to support his appeal issues with sufficient evidence or facts
> to warrant a modification of the Second Level Review (SLR).  The
> California Code of Regulations, Title 15, Section 3375 states in part
> as follows: "(a) The classification process shall be uniformly applied,
> commencing upon reception of a person committed to the custody of
> the Secretary and shall continue throughout the time the individual
> remains under the Secretary's jurisdiction.  Each inmate shall be
> individually classified in accordance with this article. (b) The
> classification process shall take into consideration the inmate's needs,
> interests and desires, his/her behavior and placement score in keeping
> with the Department and institution's/facility's program and security
> missions and public safety. (c) Each determination affecting an
> inmate's placement within an institution/facility, transfer between
> facilities, program participation, privilege groups, or custody
> designation shall be made by a classification committee composed of
> staff knowledgeable in the classification process."  A review of the
> appellant's [SOMS] Non-Committee Endorsement dated May 22,
> 2017, reveals that the CSR appropriately endorsed the appellant for
> placement at SVSP Level-IV-180-SNY-EOP based upon his mental
> health condition.  A review of the appellant's SOMS Auditor Action
> dated November 29, 2017, reveals that the appellant was endorsed to
> SATF Level-II-SNY-EOP.  Additionally, a review of the appellant's
> SOMS External Movements reveals that he has been transferred to
> SATF on December 8, 2017.  After considering all the evidence and
> arguments herein, it has been determined that staff acted appropriately
> on the appellant['s] request and are following departmental policy and
> procedures.  Further relief shall not be afforded at the Third Level of
> Review.

*Id.*

### c. 602 Inmate Appeal log nos. SVSP-17-07883 and SATF-17-06503 (Relating to November 30, 2017 Assault Incident)

As mentioned above, the record shows that on December 11, 2017, Plaintiff submitted 602 Inmate Appeal log no. SVSP-17-07883, which was later labeled as Appeal log no. SATF-17-06503. In this appeal, Plaintiff complained about the November 30, 2017 incident. Voong Decl., Ex. D at 2.

In this appeal, when asked to "[e]xplain [his] issue," Plaintiff specifically states as follows:

> On 11-30-17 I was hit in the head and was knocked out by an inmate that's unknown and my right eye[] was damaged[.] None of this should [have] happen[ed] to me cause I wr[ote] and told the Warden, Captain Gonzalez, the Sergeant, CCII and the CCI to get my off the yard to transfer me to a Level [II] Facility.

> On 12-7-17 I went to classification from ad-seg and they said ["]Inmate Fletcher you will not get us in trouble[.] We are transferring you right away[."] [A]nd they did the very next day. They put me on SATF Level 2 and It's not a high risk medical, but I am a high risk medical inmate.

> I could [have] lost my life. What happen[ed] to me should [not have] happen[ed].

*Id.* at 6 (brackets added). In response to "[a]ction requested," Plaintiff stated: "For a complete investigation to be done because I could [have] lost my life." *Id.*

After the appeal was submitted on December 11, 2017, it initially was rejected at the first level on December 13, 2017. *Id.* at 4. It was eventually resubmitted and received at the second level review on December 28, 2017. *Id.* at 5.

On February 7, 2018, Chief Deputy Warden Binkele issued a second level response, in which he identified and addressed Plaintiff's allegation of staff misconduct. *Id.* at 2. Chief Deputy Warden Binkele documented that an appropriate supervisory staff member was assigned to conduct an inquiry into this matter. *Id.* The inquiry included a review of the evidence and an evaluation of any interview conducted. *Id.* In order to determine the facts, the inquiry also included a review of pertinent documents, current policies, laws, and procedures. *Id.* Chief Deputy Warden Binkele noted that all staff personnel matters were confidential in nature, and that Plaintiff would only be notified whether the actions of staff were or were not in compliance with policy. *Id.* Chief Deputy Warden Binkele found that the staff did not violate policy as alleged and

partially granted the appeal in that an inquiry was conducted. *Id.*

On February 22, 2018, Plaintiff indicated his dissatisfaction, stating as follows:

> I am dissatisfied, very f[r]ighten[ed] and very afraid because nobody is talking, everybody is pointing fingers at one another. But I am 90 percent sure that it was an officer that hit me in the head and knocked me out and could [have] taken my life. That's why this appeal is partially granted. Somebody knows exactly what happened to me and whi[ch] officer gave them the o.k. to do it or even paid an inmate to knock me out. I fear for my life cause you still have officers that [are] from the Greenwall and you got them here as well [as] at Corcoran Prison [SATF]. Courts already know that corrupted officers killed, murder[ed], destroyed, had hit, r[a]pe, and beat up inmates. They know that somebody gave me a double over-ride and messed up and put me in a Level [IV] with my mental health condition and status and now they are trying to cover it up. But if they can't, I want a complete investigation and A.S.A.P. I'm going to have my lawyers file[ ] a civil suit. I was put through cruel [and] unusual punishment, pain, suffering, mental disturbance, hurt, depression, stress, eye surgery, headach[e]s, suicidal thoughts, can't sleep, nervous thinking what officer is going to kill me or get me set up next. Courts and Sacramento got all this bad things on file[] already by CDCR corrupted officers. I could [have] died.

*Id.* at 7.

Plaintiff sought a third level review of the appeal, and, at the third level, Appeals Examiner Liu and Chief Voong determined that no modification order was warranted and denied the appeal. *Id.* at 2. The findings at the third level are as follows:

> Upon review of the documentation submitted, the Third level of Review (TLR) finds that the appellant's allegations were appropriately reviewed and evaluated by administrative staff. The TLR notes that all staff personnel matters are confidential in nature and will not be disclosed to other staff, the inmate population, and the general public, or appellant. The appellant was informed that if the conducted of staff was determined not to be in compliance, the institution would take the appropriate course of action. In this case, the SLR informed the appellant that an inquiry was completed and disclosed the determination of that inquiry to appellant. The TLR reviewed the confidential inquiry and concurs with the determination of the SLR. The TLR notes that, while the appellant has the right to submit an appeal as a staff complaint, requests for: administrative action regarding staff the placement of documentation in a staff member's personnel file; to reprimand staff; to remove staff from a position; and/or requests for monetary compensation are beyond the scope of the appeals process. The TLR find the institution's response complies with departmental policy, and the appellant's staff complaint allegations were properly addressed. Therefore, no further shall be afforded at the TLR.

*Id.*

### B. Legal Standard for Summary Judgment

Federal Rules of Civil Procedure 56 provides that a party may move for summary judgment on some or all of the claims or defenses presented in an action. Fed. R. Civ. P. 56(a)(1). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts of materials in the record"). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). It is not the task of the district court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. *See id.*; *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1028-29 (9th Cir. 2001).

A district court may only consider admissible evidence in ruling on a motion for summary judgment. *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002). In support of the motion for summary judgment, Defendants have presented the declaration of Chief Voong and the attached exhibits in support of Chief Voong's declaration. Dkts. 21, 21-1 to 21-6. Meanwhile, Plaintiff filed his verified complaint (dkt. 1) and verified opposition to Defendants' motion (dkt. 24). The Court will construe these filings as affidavits under Federal Rules of Civil Procedure 56, insofar as they are based on personal knowledge and set forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995). However, "self-serving affidavits are cognizable to establish a genuine issue of material fact so long as they state facts based on personal knowledge and are not too conclusory." *Rodriguez v. Airborne Express*, 265 F.3d 890, 902 (9th Cir. 2001).

### C.     Analysis of Deliberate Indifference Claim Against Defendants

Plaintiff alleges that all named Defendants were deliberately indifferent to his safety needs by allowing him to be housed at SVSP where he had safety concerns and by failing to protect him from being assaulted on November 30, 2017.  Dkt. 1 at 8-9.

Defendants argue that they are entitled to qualified immunity because no reasonable officer would have known that Plaintiff faced a substantial risk to his safety from a third-party when Plaintiff could not describe or identify any potential attacker, and did not describe or report any alleged threatening behavior, to Defendants Garcia, Lomeli, Gonzalez, and Gomez.  Dkt. 21 at 20-22.

The defense of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  To determine whether an official is entitled to qualified immunity, the court must decide whether the facts alleged show the official's conduct violated a constitutional right; and, if so, whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Saucier v. Katz*, 533 U.S. 194, 201-02 (2001); *see also Pearson v. Callahan*, 555 U.S. 223 (2009) (overruling *Saucier*'s requirement that qualified immunity analysis proceed in a particular sequence).  "[I]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.

The threshold question in qualified immunity analysis is:  "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.*  A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was "clearly established." *Pearson*, 555 U.S. at 236-37.  Where there is no clearly established law that certain conduct constitutes a constitutional violation, the defendant cannot be on notice that such conduct is unlawful. *Rodis v. City and County of S.F.*, 558 F.3d 964, 970 (9th Cir. 2009).  The relevant, dispositive inquiry in determining whether a right is clearly established

is whether it would be clear to a reasonable defendant that his conduct was unlawful in the situation he confronted. *Saucier*, 533 U.S. at 202.

The Eighth Amendment requires that prison officials take reasonable measures to guarantee the safety of prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In particular, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Id.* at 833; *Cortez v. Skol*, 776 F. 3d 1046, 1050 (9th Cir. 2015); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005); *Gillespie v. Civiletti*, 629 F.2d 637, 642 & n.3 (9th Cir. 1980). The failure of prison officials to protect inmates from attacks by other inmates or from dangerous conditions at the prison violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to inmate health or safety. *Farmer*, 511 U.S. at 834. A prison official is deliberately indifferent if he knows of and disregards an excessive risk to inmate health or safety by failing to take reasonable steps to abate it. *Id.* at 837.

A prisoner may state a section 1983 claim under the Eighth Amendment against prison officials only where the officials acted with "deliberate indifference" to the threat of serious harm or injury to an inmate by another prisoner, *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986); *see also Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989) (deliberately spreading rumor that prisoner is snitch may state claim for violation of right to be protected from violence while in state custody), or by physical conditions at the prison. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *See Farmer*, 511 U.S. at 837. However, an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. *See id.* at 842; *see also Lemire v. Cal. Dept. Corrections & Rehabilitation*, 726 F.3d 1062, 1078 (9th Cir. 2013) (articulating two-part test for deliberate indifference: plaintiff must show, first, that risk was obvious or provide other evidence that prison officials were aware of the substantial risk to the inmates' safety, and second, no reasonable justification for exposing inmates to risk). This is a question of fact. *Farmer*, 511 U.S. at 842;

*see, e.g., Cortez*, at 1050-52 (reversing grant of summary because, when viewed in the light most favorable to plaintiff, sufficient evidence showed (1) that undermanned escort by one prison guard of three mutually hostile, half-restrained, high-security inmates through an isolated passage posed a substantial risk of harm; and (2) that escorting officer was aware of the risk involved); *Labatad v. Corrections Corp. of America*, 714 F.3d 1155, 1160 (9th Cir. 2013) (finding no deliberate indifference to prisoner's safety where the record, viewed objectively and subjectively, did not lead to an inference that the prison officials responsible for making the prisoner's cell assignment were aware that he faced a substantial risk of harm).

A trier of fact may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious; a plaintiff therefore may meet his burden of showing awareness of a risk by presenting evidence of very obvious and blatant circumstances indicating that the prison official knew the risk existed. *Foster v. Runnels*, 554 F.3d 807, 814 (9th Cir. 2009) ("risk that an inmate might suffer harm as a result of the repeated denial of meals is obvious"). But while obviousness of risk may be one factor in demonstrating subjective knowledge, a defendant's liability must still be based on actual awareness of the risk rather than constructive knowledge. *Harrington v. Scribner*, 785 F.3d 1299, 1304 (9th Cir. 2015). While a prisoner's failure to give prison officials advance notice of a specific threat is not dispositive with respect to whether prison officials acted with deliberate indifference to the prisoner's safety needs, deliberate indifference will not be found where there is no other evidence in the record showing that the defendants knew of facts supporting an inference and drew the inference of substantial risk to the prisoner. *Labatad*, 714 F.3d at 1160-61. The official need not "believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before that officer is obligated to take steps to prevent such an assault." *Berg*, 794 F.2d at 459. Before being required to take action, he must, however, have more than a "mere suspicion" that an attack will occur. *Id.*

Here, Defendants argue that they are qualifiedly immune because no reasonable official would have known that their actions were unlawful. Dkt. 21 at 20-22. Defendants further argue that Plaintiff fails to show that they were deliberately indifferent in their investigation of Plaintiff's safety concerns and their finding proper the prison transfer recommendations and

decisions. *Id.* at 16-20. Moreover, it seems that Defendants are claiming that they were not involved in the decision to transfer Plaintiff to SVSP because they did not endorse Plaintiff for transfer as a CSR, and they did not conduct any inquiry or decision regarding Plaintiff's appeals. *See id.* Instead, Defendants point out that the CSR endorsed Plaintiff to be transferred to SVSP "based on a Double Override to facilitate necessary EOP treatment, noting enemy concerns and lower-bunk, ground-floor concerns at alternate institutions." *Id.* at 9 (citing Dkt. 1 at 15-16, 20). Defendants argue that these facts demonstrate that they are entitled to qualified immunity because no reasonable officer would have known that Plaintiff faced a substantial risk to his safety from a third-party at SVSP when Plaintiff could not describe or identify any potential attacker, and did not describe or report any alleged threatening behavior, to Defendants. *Id.* at 20-22.

In opposition, Plaintiff asserts the same allegations found in his complaint, but he fails to set forth any evidence that Defendants' conduct was sufficiently serious and was done with deliberate indifference to Plaintiff's safety. *See* Dkt. 63.

Even if Plaintiff only expressed fear to staff members that he was in danger of an assault while housed SVSP because he was a Level II inmate housed in a Level IV prison, this generalized fear consists of conclusory statements that are insufficient to demonstrate that Defendants disregarded an excessive risk to him. Specifically, Plaintiff contends that he sent letters for the past 5 months explaining that his "life was in danger" to the "CCI [Defendant Garcia[10]], CCII, Sargent [sic] and Captain [Defendant Gonzalez] as well as to the Warden," but they did nothing about it. Dkt. 24 at 3. However, Plaintiff has not provided any further details related to his allegations that his life was in danger. *Id.*, *see* Dkt. 1. Instead, in an attachment to the complaint, Plaintiff stated he had a "strong feeling" that "sometime soon somebody is either going to kill [him], murder [him] or hurt [him] badly because he [was] a Level 2 inmate." Dkt. 1 at 32. Again, Plaintiff did not provide more details, such as the identity of any potential attacker

---

[10] As explained in the background section above, Plaintiff also alleged that on June 11, 2017, he sent Defendant Garcia a CDCR Form 22 "stating that a retaliation was against" him and to "please endorse [him] to his rightful Level II SNY/EOP Facility." Dkt. 1 at 22. Defendant Garcia responded by informing Plaintiff that he was scheduled for a UCC classification hearing. *Id.* at 23.

or even a description of the inmates who threatened his life. *See id.* In essence, Plaintiff has failed to come forward with facts showing that Defendants Garcia and Gonzalez had any reason to believe Plaintiff would be attacked, other than "mere suspicion" that an attack will occur, and thus no reasonable jury could conclude that these Defendants were deliberately indifferent to Plaintiff's safety needs for doing nothing after receiving such letters. *See Berg*, 794 F.2d at 460 (stating summary judgment appropriate as to defendants when plaintiff "failed to come forward with facts showing that these defendants had any reason to believe he would be attacked by the assailant"). Furthermore, as explained above, the record shows that Defendant Garcia did not ignore Plaintiff's initial concerns because on June 11, 2017, he provided Plaintiff with a copy of the "Endorsement Chrono" (which the Court assumes to be the "Non-Committee Endorsement" dated May 22, 2017) authorizing Plaintiff's transfer to SVSP even if it was a Level IV Facility. *See* Dkt. 1 at 23. As explained in the endorsement, Plaintiff was being housed at SVSP to "facilitate necessary EOP treatment," which shows that such a transfer was done in furtherance of advancing the legitimate correctional goal of providing mental health treatment to Plaintiff. *See* Dkt. 1 at 15. Also in the endorsement was a note stating that "[e]nemy concerns noted at SVSP Facility A, however placement at SVSP Facility D can be accommodated," and the record shows that Plaintiff was housed in SVSP's Yard-D. *Id.* The endorsement also indicated that the "[c]ommittee [was] to re-evaluate [Plaintiff] for appropriate placement at the next review period." *Id.* And, as mentioned, Defendant Garcia informed Plaintiff on June 11, 2017 that he was scheduled for a UCC classification hearing. *Id.* at 23. Furthermore, even if the evidence shows that prior to his next classification hearing Plaintiff was actually assaulted on November 30, 2017, at most he would only state a negligence claim against Defendants, which is not cognizable under section 1983. *See Farmer*, 511 U.S. at 835-836 (negligence does not constitute deliberate indifference).

In his complaint, Plaintiff claims in a conclusory fashion that Defendant Lomeli "knowingly and intentionally put [Plaintiff's] life in danger and did not remove [him] from [SVSP's] D-Yard." Dkt. 1 at 9. Although self-serving affidavits may establish a genuine issue of material fact, they may do so only when "they state facts based on personal knowledge and are not too conclusory." *Rodriguez*, 265 F.3d at 902. Here, Plaintiff's allegations in his complaint that

relate to Defendant Lomeli's conduct are conclusory assertions and are insufficient to establish a genuine issue of material fact. *See id.* Plaintiff contends that he spoke to Defendant Lomeli and she allegedly stated, "I don't give a dam[n] about you being black" and "I'm getting pressure from the Greenwall," *see* dkt. 1 at 9, but these alleged statements do not demonstrate that she disregarded a known threat to his safety. Plaintiff contends that Defendant Lomeli's actions of putting his life in danger were "intentional." *Id.* However, such a contention is pure speculation, and not based on Plaintiff's own personal knowledge. Plaintiff's unsupported speculation about Defendant Lomeli's mental state does not create a triable issue of fact. *See Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001) (plaintiff's belief that defendant acted with an unlawful motive, without supporting evidence, is not cognizable evidence on summary judgment.)

As to Defendant Gomez, it seems that Plaintiff seeks to hold him liable for investigating Plaintiff's safety concerns after the November 30, 2017 incident, but Defendants argue that "more is required to sustain [an] Eighth Amendment claim." Dkt. 21 at 19-20. The Court agrees with Defendants. The record shows that on December 6, 2017, Defendant Gomez conducted an investigation into Plaintiff's claim of safety concerns. *See* Dkt. 1 at 28, Voong Decl., Ex. C at 10. Even though Defendant Gomez noted that Plaintiff was "not being truthful about his safety concerns," *see* Dkt. 1 at 28, the record shows that SVSP prison officials acted quickly to immediately put him in ad-seg after the incident and then they attempted to expedite his transfer out of SVSP, *id.* at 28-29. Plaintiff had his ICC classification hearing on December 7, 2017, and he was transferred to SATF the very next day. *Id.* Thus, Defendant Gomez's actions of investigating or his subsequent findings that Plaintiff was not being truthful did *not* affect the decision to transfer Plaintiff to SATF.

After viewing all the evidence submitted, the Court finds that there is no genuine issue of material fact with respect to Plaintiff's claim that Defendants acted with deliberate indifference to his safety. The undisputed facts show that none of the named Defendants were directly responsible for making the actual endorsement to transfer Plaintiff to SVSP. (Again, the record shows that the decision to endorse Plaintiff to SVSP was made by the CSR on May 22, 2017. Dkt.

1 at 15.)  Instead, the evidence shows that Defendants were mostly involved in responding to

Plaintiff's complaints about his safety concerns after his transfer to SVSP, including: (1) failing to

respond to Plaintiff's letters relating to his safety concerns about his transfer to SVSP (Defendants

Garcia and Gonzalez); (2) meeting with Plaintiff on October 23, 2017 about his annual review and

allegedly "put [Plaintiff's] life in anger and did not remove [him] from [SVSP's]  D-Yard

(Defendant Lomeli); and (3) investigating Plaintiff's safety concerns after the November 30, 2017

assault incident and concluding that Plaintiff was not truthful about his concerns because he

refused to provide information to identify the suspect or explain the reason for the alleged threat

(Defendant Gomez).  And, as the Court has determined above, Plaintiff has failed to create a

triable issue of fact that Defendants' aforementioned conduct was sufficiently serious and was

done with deliberate indifference to Plaintiff's safety

     In sum, having considered all the evidence submitted, the Court finds the evidence fails to

show a violation of Plaintiff's Eighth Amendment rights.  Therefore, Defendants prevail on the

first prong of the *Saucier* test.  *See Saucier*, 533 U.S. at 201.  Furthermore, the Court finds that no

reasonable officer would have known that Plaintiff faced a substantial risk to his safety from a

third-party when Plaintiff could not describe or identify any potential attacker, and did not

describe or report any alleged threatening behavior, to Defendants.  *Id.* at 202.  Therefore, a

reasonable person in Defendants' situation could have believed that their actions did not violate

Plaintiff's clearly established constitutional rights.  *Id.*  Accordingly, Defendants are entitled to

qualified immunity against Plaintiff's deliberate indifference to safety claim, and their motion for

summary judgment is GRANTED based on those grounds.  Dkt. 21.

## III.    CONCLUSION

     For the reasons outlined above, the Court GRANTS Defendants' motion for summary

judgment and DENIES as moot their motion to dismiss.[11]  The Clerk shall terminate all pending

---

[11] The Court's finding that Defendants are entitled to summary judgment based on qualified immunity obviates the need to address Defendants' alternative argument in their motion for summary judgment, including that Plaintiff's claim fails because he only partially exhausted his administrative remedies.  It also obviates the need to address Defendants' alternative motion to dismiss relating to their argument that no evidence exists that Defendants violated Plaintiff's Eighth Amendment rights.  Therefore, the motion to dismiss is DENIED as moot.

motions and close the file.

This Order terminates Docket No. 21.

IT IS SO ORDERED.

Dated: December 23, 2019

_____
YVONNE GONZALEZ ROGERS
United States District Judge